# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

### CASE NO. 18-24198-CIV-MARTINEZ-OTAZO-REYES

GOVERNMENT EMPLOYEES INSURANCE CO.,
GEICO INDEMNITY CO., GEICO GENERAL
INSURANCE COMPANY and GEICO CASUALTY CO.,

      Plaintiffs,                                    **Jury Trial Demanded**

              vs.

A & C MEDICAL CENTER SERVICES, CORP.,
REINIER RODRIGUEZ, ALAIN OSORIO PEREZ, LMT,
CARE & SERVICES OF REHABILITATION, INC.,
VIVEK VIJAY TIRMAL, M.D., VIOLETA
HERNANDEZ, L.M.T. a/k/a VIOLETA HERNANDEZ
ARIAS,  FOOT TREATMENT CENTER, INC.,
GABRIEL WONG, L.M.T., SIMPLY HEALTH CARE,
INC., ELIZANDRO MENENDEZ, PILAR M. CRESPO
CASTRO, L.M.T., SUNSET MEDICAL NETWORK,
INC., MARIA BORRAJO, DENIA PELLITERO, L.M.T.,
and DANAIS REYES, L.M.T.,

      Defendants.

---

### AMENDED COMPLAINT

      Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General

Insurance Company and GEICO Casualty Co. (collectively "GEICO" or "Plaintiffs"), as and for

their Complaint against Defendants, hereby allege as follows:

      1.      This action seeks to recover more than $4,350,000.00 that Defendants wrongfully

obtained from GEICO by submitting, and causing to be submitted, thousands of fraudulent no-fault

("no-fault", "personal injury protection", or "PIP") insurance charges through Defendants A & C

Medical Center Services, Corp. ("A&C Medical"), Care & Services of Rehabilitation, Inc. ("Care

& Services"), Foot Treatment Center, Inc. ("Foot Treatment"), Simply Health Care, Inc. ("Simply

Health"), and Sunset Medical Network, Inc. ("Sunset Medical")(collectively the "Clinic Defendants"), relating to medically unnecessary, illusory, unlawful, and otherwise non-reimbursable healthcare services, including initial examinations, follow-up examinations, and physical therapy services (collectively the "Fraudulent Services"), that purportedly were provided to Florida automobile accident victims ("Insureds") who were eligible for coverage under GEICO no-fault insurance policies. In addition, GEICO seeks a declaration that it is not legally obligated to pay reimbursement of pending no-fault insurance claims that Defendants have submitted or caused to be submitted through the Clinic Defendants, because the claims and/or underlying services are fraudulent, medically unnecessary, illusory, unlawful, and otherwise non-reimbursable.

2.      The charts annexed hereto as Exhibits "1" – "5" set forth a large and representative sample of the fraudulent claims that have been identified to date that Defendants have submitted, or caused to be submitted, to GEICO through the respective Clinic Defendants. Defendants' interrelated fraudulent schemes began no later than 2014 and have continued uninterrupted since that time.

## THE PARTIES

3.      Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively, "GEICO") are Maryland corporations with their principal places of business in Chevy Chase, Maryland.  GEICO is authorized to conduct business and to issue automobile insurance policies in Florida.

4.      The Defendants fall into the following categories:

(i)     Defendant A&C Medical is a Florida corporation with its principal place of business in Miami, Florida. At all relevant times, A&C Medical falsely purported to be a properly-licensed healthcare clinic that operated in compliance with the licensing requirements set forth in the Florida Health Care Clinic Act (the "Clinic Act", Fla. Stat. § 400.990 et seq.). A&C Medical was incorporated in Florida on or about July 26, 2007, was owned and controlled by Defendant Reinier Rodriquez

("Rodriguez"), falsely purported to have a legitimate medical director, and was used as a vehicle to submit fraudulent no-fault insurance billing to GEICO and other insurers.

(ii)     Defendant Foot Treatment is a Florida corporation with its principal place of business in Miami, Florida. At all relevant times, Foot Treatment falsely purported to be a properly-licensed healthcare clinic that operated in compliance with the licensing requirements set forth in the Clinic Act. Foot Treatment was incorporated in Florida on or about February 14, 1997, was owned and controlled by Rodriquez, falsely purported to have a legitimate medical director, and was used as a vehicle to submit fraudulent no-fault insurance billing to GEICO and other insurers.

(iii)    Defendant Rodriguez resides in and is a citizen of Florida. Rodriguez owned and controlled Defendants A&C Medical and Foot Treatment, and used A&C Medical and Foot Treatment as vehicles to submit fraudulent no-fault insurance billing to GEICO and other insurers.

(iv)     Defendant Alain Osorio Perez, LMT ("Perez") resides in and is a citizen of Florida. Perez was licensed to practice massage therapy in Florida on September 29, 2011, and performed many of the Fraudulent Services on behalf of A&C Medical. (Defendants A&C Medical, Rodriguez, and Perez are collectively referred to as the "A&C Medical Defendants").

(v)      Defendant Gabriel Wong, LMT ("Wong") resides in and is a citizen of Florida. Wong was licensed to practice massage therapy in Florida on January 14, 2011, and performed many of the Fraudulent Services on behalf of Foot Treatment. (Defendants Foot Treatment, Rodriguez, and Wong are collectively referred to as the "Foot Treatment Defendants").

(vi)     Defendant Care & Services is a Florida corporation with its principal place of business in Miami, Florida. At all relevant times, Care & Services falsely purported to be a properly-licensed healthcare clinic that operated in compliance with the licensing requirements set forth in the Clinic Act. Care & Services was incorporated in Florida on or about May 25, 2010, was owned and controlled by Defendant Violeta Hernandez, LMT a/k/a Violeta Hernandez Arias ("Hernandez"), falsely purported to have a legitimate medical director, and was used as a vehicle to submit fraudulent no-fault insurance billing to GEICO and other insurers.

(vii)    Defendant Hernandez resides in and is a citizen of Florida. Hernandez owned and controlled Care & Services, and used Care & Services as a vehicle to submit fraudulent no-fault insurance billing to GEICO and other insurers. In addition, Hernandez was licensed as a massage therapist in Florida on February 17, 2006, and performed many of the Fraudulent Services on behalf of Care & Services.

(viii)   Defendant Vivek Vijay Tirmal, M.D. ("Tirmal") resides in and is a citizen of Florida. Tirmal was licensed to practice medicine in Florida on September 1, 2001, and falsely purported to serve as medical director at Care & Services. (Defendants

3

Care & Services, Hernandez, and Tirmal are collectively referred to as the "Care & Services Defendants").

(ix) Defendant Simply Health is a Florida corporation with its principal place of business in Miami, Florida. At all relevant times, Simply Health falsely purported to be a properly-licensed healthcare clinic that operated in compliance with the licensing requirements set forth in the Clinic Act. Simply Health was incorporated in Florida on or about August 14, 2015, was owned and controlled by Defendant Elizandro Menendez ("Menendez"), falsely purported to have a legitimate medical director, and was used as a vehicle to submit fraudulent no-fault insurance billing to GEICO and other insurers.

(x) Defendant Menendez resides in and is a citizen of Florida. Menendez owned and controlled Simply Health, and used Simply Health as a vehicle to submit fraudulent no-fault insurance billing to GEICO and other insurers.

(xi) Defendant Pilar M. Crespo Castro, LMT ("Castro") resides in and is a citizen of Florida. Castro was licensed to practice massage therapy in Florida on March 31, 2011, and performed many of the Fraudulent Services on behalf of Simply Health. (Defendants Simply Health, Menendez, and Castro are collectively referred to as the "Simply Health Defendants").

(xii) Defendant Sunset Medical is a Florida corporation with its principal place of business in Miami, Florida. At all relevant times, Sunset Medical falsely purported to be a properly-licensed healthcare clinic that operated in compliance with the licensing requirements set forth in the Clinic Act. Sunset Medical was incorporated in Florida on or about June 16, 2010, was owned and controlled by Defendant Maria Borrajo ("Borrajo"), falsely purported to have a legitimate medical director, and was used as a vehicle to submit fraudulent no-fault insurance billing to GEICO and other insurers.

(xiii) Defendant Borrajo resides in and is a citizen of Florida. Borrajo owned and controlled Sunset Medical, and used Sunset Medical as a vehicle to submit fraudulent no-fault insurance billing to GEICO and other insurers.

(xiv) Defendant Denia Pellitero, LMT ("Pellitero") resides in and is a citizen of Florida. Pellitero was licensed to practice massage therapy in Florida on July 11, 2011, and performed many of the Fraudulent Services on behalf of Sunset Medical.

(xv) Defendant Danais Reyes, LMT ("Reyes") resides in and is a citizen of Florida. Reyes was licensed to practice massage therapy in Florida on August 19, 2011, and performed many of the Fraudulent Services on behalf of Sunset Medical. (Defendants Sunset Medical, Borrajo, Pellitero, and Reyes are collectively referred to as the "Sunset Medical Defendants").

(xvi) Defendants Rodriguez, Hernandez, Menendez, and Borrajo are collectively referred to as the "Clinic Owner Defendants".

4

(xvii)  Defendants Perez, Wong, Hernandez, Castro, Pellitero, and Reyes are collectively referred to as the "Massage Therapist Defendants".

5.      Although not named as Defendants in this Amended Complaint, the following individuals also are pertinent to this action:

(i)     Carlos Arturo Almonte-Gomez, M.D. ("Almonte") is a physician licensed to practice medicine in Florida, falsely purported to serve as the medical director of numerous Clinics including Defendants A&C Medical, Foot Treatment, and Sunset Medical, and purportedly performed or directly supervise virtually all of the Fraudulent Services on behalf of all of the Clinic Defendants.

(ii)    Don Qui Pham, D.O. ("Pham") is a physician licensed to practice medicine in Florida, and falsely purported to serve as the medical director of Simply Health.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the total matter in controversy, exclusive of interest and costs, exceeds the jurisdictional threshold of $75,000.00, and is between citizens of different states.  This Court also has original jurisdiction pursuant to 28 U.S.C. § 1331 over claims brought under 18 U.S.C. §§ 1961 et seq. (the Racketeer Influenced and Corrupt Organizations ("RICO") Act).  In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

7.      Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Southern District of Florida is the District where one or more of Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## ALLEGATIONS

**I.      Brief Overview of Pertinent Law Governing No-Fault Insurance Reimbursement**

8.      Florida requires automobile insurers to provide Personal Injury Protection benefits ("PIP Benefits") to Insureds when they are injured in a motor vehicle accident.  See Florida Motor Vehicle No-Fault Law, Fla. Stat. §§ 627.730-627.7405 (the "No-Fault Law").

9.      Under the No-Fault Law, a healthcare services provider who possesses an assignment of PIP Benefits from an Insured and who provides healthcare services to an Insured may submit claims directly to an insurance company in order to receive payment for medically necessary services, using the required claim forms, including the Healthcare Financing Administration insurance claim form (known as the "HCFA-1500 form" or "CMS-1500" form).

10.     In order for a healthcare service to be eligible for PIP reimbursement, it must be "lawfully" provided and medically necessary. Insurers such as GEICO also are not required to pay for upcoded charges, or to anyone who knowingly submits a false or misleading statement relating to the claim or charges.  See Fla. Stat. § 627.736.

11.     In addition, the No-Fault Law prohibits PIP reimbursement for massage or for services provided by unsupervised massage therapists. See Fla. Stat. § 627.736.

12.     Pursuant to the Clinic Act, clinics operating in Florida must – among other things – appoint a medical director who must "[c]onduct systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful", and take immediate corrective action upon discovery of a fraudulent or unlawful charge. See Fla. Stat. § 400.9935(1). In addition, a clinic medical director must "[e]nsure that all healthcare practitioners at the clinic have active appropriate certification or licensure for the level of care being provided." See Fla. Stat. § 400.9935(1).

13.     Pursuant to the Clinic Act, "[a] charge or reimbursement claim made by or on behalf of a clinic that is required to be licensed . . . but that is not so licensed, or that is otherwise operating in violation of this part . . . is an unlawful charge." See Fla. Stat. § 400.9935(3).

## II.   **Defendants' Interrelated Fraudulent Schemes**

### A.   **The Fraudulent Misrepresentations Regarding the Identities of the Healthcare Providers Rendering Services at the Clinic Defendants**

14.     Each of the Defendants, through its association with one or more of the Clinic Defendants, caused GEICO to be billed for a range of Fraudulent Services, specifically purported: (i) initial patient examinations; (ii) follow-up patient examinations; and (iii) physical therapy services. As set forth in Exhibits "1" – "5", the purported physical therapy services constituted the vast majority of the Fraudulent Services billed through each of the Clinic Defendants to GEICO.

15.     All of the "physical therapy" services that Defendants purported to provide between 2014 and the present were performed – to the extent that they were performed at all – by unsupervised massage therapists associated with each of the Clinic Defendants, including Perez at A&C Medical, Wong at Foot Treatment, Hernandez at Care & Services, Castro at Simply Health, and both Pellitero and Reyes at Sunset Medical.

16.     Each of the Massage Therapist Defendants was only licensed as a massage therapist. None of the Massage Therapist Defendants was ever licensed as a physical therapist.

17.     The Defendants were well-aware of the fact that the Clinic Defendants could not legally recover PIP Benefits for "physical therapy" or any other kinds of healthcare services performed by unsupervised massage therapists such as the Massage Therapist Defendants.

18.     Accordingly, starting in 2014, the Defendants began to falsely represent – in virtually every single bill for "physical therapy" services that they submitted or caused to be submitted through the respective Clinic Defendants to GEICO – that Almonte, a licensed physician, had either performed or directly supervised the putative physical therapy services.

19.     In reality, Almonte neither performed nor directly supervised any of the physical therapy services that were billed through the Clinic Defendants to GEICO. For example, Almonte

swore – in a May 7, 2019 affidavit – that he never personally performed or supervised any of the purported physical therapy services billed through the Clinic Defendants to GEICO.

20.     Each of the claims submitted by Defendants for physical therapy services identified in Exhibits "1" – "5", falsely represented that Almonte had performed or at least directly supervised the underlying physical therapy services to create the false appearance that the services were eligible for PIP reimbursement, when in fact they were not.

**B.     The Fraudulent Billing for Services That Never Were Provided in the First Instance**

21.     The Defendants also routinely billed GEICO, or caused GEICO to be billed, for services that they never provided in the first instance.

22.     For example, in the claims identified in Exhibits "1" – "5", the Defendants routinely caused GEICO to be billed for more than 15-20 hours of physical therapy and other services that Almonte – who was simultaneously employed as a medical director and/or treating physician at several other medical clinics – purported to personally perform or directly supervise on individual dates of service. What is more, the Defendants not only were billing GEICO for an improbable or impossible number of services per day, but also – simultaneously – were billing other Florida automobile insurers for a commensurate, and impossible, number of services per day, considering that GEICO is only one of many insurers in the Florida automobile insurance market.

23.     The Defendants were able to bill an improbable or impossible number of services to GEICO and other automobile insurers because they were not actually providing the services.

24.     In keeping with the fact that the Care & Services Defendants, Simply Health Defendants, and Sunset Medical Defendants often never even provided the physical therapy services in the first instance, several GEICO Insureds provided statements to insurance investigators, advising that they never received the services that were billed through Care & Services, Simply Health, and Sunset Medical to GEICO.

25.     Strictly by way of example:

(i)     On March 14, 2018, an Insured named JT swore, among other things, that he never received ultrasound therapy or neuromuscular reeducation that were billed through Care & Services to GEICO on various dates in February and March 2018, and that his minor daughter – AT – never received mechanical traction, therapeutic exercises, or neuromuscular reeducation that were billed through Care & Services to GEICO on various dates in February-March 2018.

(ii)    On April 13, 2018, an Insured named JT swore, among other things, that he never received any ultrasound therapy at Simply Health. This, despite the fact that the Simply Health Defendants billed GEICO for 37 sessions of ultrasound therapy that they purported to provide to JT on various dates of service in December 2017-February 2018.

(iii)   On April 13, 2018, an Insured named GA swore, among other things, that she never received any therapeutic activities at Sunset Medical. This, despite the fact that the Sunset Medical Defendants billed GEICO for 30 sessions of therapeutic activities that they purported to provide to GA on various dates of service in October-December 2017.

## C.     The Defendants' Fraudulent Treatment and Billing Protocols

26.     In the claims identified in Exhibits "1" - "5", virtually none of the Insureds whom the Defendants purported to treat suffered from any significant injuries or health problems as a result of the relatively minor accidents they experienced or purported to experience.

27.     Even so, the Defendants purported to subject virtually every Insured to a medically unnecessary course of "treatment" pursuant to pre-determined, fraudulent protocols designed to maximize the billing that they could submit to insurers, including GEICO, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

## 1.     The Fraudulent Claims for Initial Examinations

28.     As an initial step in the Defendants' fraudulent treatment and billing protocols, each of the Insureds in the claims identified in Exhibits "1" - "5" purportedly received an initial examination from Almonte at the respective Clinic Defendants.

29.     The purported initial examinations then were billed to GEICO in the following

manner:

(i)     As set forth in Exhibit "1", A&C Medical and Rodriguez billed GEICO under CPT code 99203 for each initial examination that Almonte purportedly provided at A&C Medical.

(ii)    As set forth in Exhibit "2", Care & Services and Hernandez billed GEICO under CPT code 99204 for each initial examination that Almonte purportedly provided at Care & Services.

(iii)   As set forth in Exhibit "3", Foot Treatment and Rodriguez billed GEICO under CPT code 99203 or 99205 for each initial examination that Almonte purportedly provided at Foot Treatment.

(iv)    As set forth in Exhibit "4", Simply Health and Menendez billed GEICO under CPT code 99203 for each initial examination that Almonte purportedly provided at Simply Health.

(v)     As set forth in Exhibit "5", Sunset Medical and Borrajo billed GEICO under CPT code 99204 for each initial examination that Almonte purportedly provided at Sunset Medical.

30.     Pursuant to the American Medical Association's CPT Assistant, which governs

reimbursement of PIP claims:

(i)     the use of CPT code 99203 to bill for an initial patient examination represents that: (a) the Insured presented with problems of moderate severity; (b) the physician who conducted the examination spent at least 30 minutes of face-to-face time with the patient or the patient's family; (c) the physician who performed the examination conducted a "detailed" physical examination; and (d) the physician who performed the examination engaged in "low complexity" medical decision-making;

(ii)    the use of CPT code 99204 to bill for an initial patient examination represents – among other things – that: (a) the Insured presented with problems of moderate to high severity; (b) the physician who conducted the examination spent at least 45 minutes of face-to-face time with the patient or the patient's family; (c) the physician who performed the examination conducted a "comprehensive" physical examination; and (d) the physician who performed the examination engaged in "moderate complexity" medical decision-making; and

(iii)   the use of CPT code 99205 to bill for an initial patient examination represents – among other things – that: (a) the Insured presented with problems of moderate to high severity; (b) the physician who conducted the examination spent at least 60 minutes of face-to-face time with the patient or the patient's family; (c) the

physician who performed the examination conducted a "comprehensive" physical examination; and (d) the physician who performed the examination engaged in "high complexity" medical decision-making.

31.     As set forth below, the charges for the initial examinations identified in Exhibits "1" - "5" also were fraudulent in that they misrepresented the nature and extent of the initial examinations.

**(i)     Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

32.     To the extent that the Insureds in the claims identified in Exhibits "1" - "5" had any presenting problems at all as the result of their minor automobile accidents, the problems virtually always were low severity soft tissue injuries such as sprains and strains.

33.     For instance, in the vast majority of the claims identified in Exhibits "1" - "5" the Insureds did not seek treatment at any hospital as the result of their accidents. To the limited extent that the Insureds in the claims identified in Exhibits "1" - "5" did seek treatment at a hospital following their accidents, they virtually always were briefly observed on an outpatient basis, and discharged with nothing more serious than a minor soft tissue injury diagnosis.

34.     Furthermore, in the substantial majority of the claims identified in Exhibits "1" - "5", contemporaneous police reports indicated that the underlying accidents involved low-speed, low-impact collisions, that the Insureds' vehicles were functional following the accidents, and that no one was seriously injured in the accidents, or injured at all.

35.     Even so, in the claims for initial examinations identified in Exhibits "1" - "5", the Clinic Defendants and Clinic Owner Defendants made the following misrepresentations:

(i)     When billing GEICO for putative initial examinations using CPT code 99203, A&C Medical, Foot Treatment, Rodriguez, Simply Health, and Menendez falsely represented that the Insureds presented with problems of moderate severity, when in fact the Insureds' problems were low-severity soft tissue injuries such as sprains and strains, to the limited extent that they had any presenting problems at all.

11

(ii)     When billing GEICO for putative initial examinations using CPT code 99204 and 99205, Care & Services, Hernandez, Sunset Medical, Borrajo, Foot Treatment, and Rodriguez falsely represented that the Insureds presented with problems of moderate to high severity, when in fact the Insureds' problems were low-severity soft tissue injuries such as sprains and strains, to the limited extent that they had any presenting problems at all.

36.     In the claims for initial examinations identified in Exhibits "1" - "5", the Clinic Defendants and Clinic Owner Defendants routinely falsely represented that the Insureds presented with problems of either moderate severity or moderate to high severity in order to: (i) create a false basis for their charges for the examinations under CPT codes 99203, 99204, or 99205, because examinations billable under CPT codes 99203, 99204, or 99205 are reimbursable at higher rates than examinations involving presenting problems of low severity, or no severity; and (ii) create a false basis for the laundry list of other Fraudulent Services that the Defendants purported to provide to the Insureds.

**(ii)     Misrepresentations Regarding "Detailed" and "Comprehensive" Physical Examinations**

37.     In addition, in the claims for initial examinations identified in Exhibits "1" - "5", when the Clinic Defendants and Clinic Owner Defendants billed GEICO for putative initial examinations, they made the following misrepresentations regarding the nature and extent of Almonte's physical examinations of the Insureds:

(i)     When billing GEICO for putative initial examinations using CPT code 99203, A&C Medical, Foot Treatment, Rodriguez, Simply Health, and Menendez falsely represented that the physician who purported to conduct the examinations – namely Almonte – conducted "detailed" physical examinations of the Insureds who purportedly received the examinations.

(ii)     When billing GEICO for putative initial examinations using CPT code 99204 and 99205, Care & Services, Hernandez, Sunset Medical, Borrajo, Foot Treatment, and Rodriguez falsely represented that the physician who purported to conduct the examinations – namely Almonte – conducted "comprehensive" physical examinations of the Insureds who purportedly received the examinations.

38.     In fact, with respect to the claims for initial examinations under CPT code 99203 that are identified in Exhibits "1", "3", and "4", Almonte never conducted a "detailed" patient examination because: (i) pursuant to the CPT Assistant, a "detailed" physical examination requires – among other things – that the physician performing the examination document an extended examination of the affected body areas and other symptomatic or related organ systems; but (ii) Almonte did not document an extended examination of the Insureds' musculoskeletal systems or any of the Insureds' other systems.

39.     Additionally, with respect to the claims for initial examinations under CPT code 99204 that are identified in Exhibits "2" and "5", and the claims for initial examinations under CPT code 99205 that are identified in Exhibit "3", Almonte never conducted a "comprehensive" patient examination because: (i) pursuant to the CPT Assistant, a "comprehensive" physical examination requires – among other things – that the physician performing the examination document a general examination of multiple patient organ systems or a complete examination of a single patient organ system; but (ii) Almonte did not document a general examination of multiple patient organ systems or a complete examination of a single patient organ system.

40.     In all of the claims for initial examinations that are identified in Exhibits "1" – "5", the Clinic Defendants and Clinic Owner Defendants falsely represented that they had provided either "detailed" or "comprehensive" physical examinations to the Insureds, because examinations billable under CPT codes 99203, 99204, and 99205 are reimbursable at higher rates than examinations that do not require the examining physician to provide either "detailed" or "comprehensive" physical examinations.

(iii)     **Misrepresentations Regarding the Extent of Medical Decision-Making**

41.     Moreover, in the claims for initial examinations identified in Exhibits "1" - "5", when the Clinic Defendants and Clinic Owner Defendants billed GEICO for putative initial examinations, they made the following misrepresentations regarding the extent of medical decision-making that the examinations entailed:

(i)     When billing GEICO for putative initial examinations using CPT code 99203, A&C Medical, Foot Treatment, Rodriguez, Simply Health, and Menendez falsely represented that Almonte engaged in some genuine, low-complexity medical decision-making during the initial examinations.

(ii)     When billing GEICO for putative initial examinations using CPT code 99204, Care & Services, Hernandez, Sunset Medical, and Borrajo falsely represented that Almonte engaged in some genuine, moderate-complexity medical decision-making during the initial examinations.

(iii)     When billing GEICO for putative initial examinations using CPT code 99205, Foot Treatment and Rodriguez falsely represented that Almonte engaged in some genuine, high-complexity medical decision-making during the initial examinations.

42.     In actuality, the purported initial examinations did not involve any legitimate medical decision-making at all.

43.     For example, in the claims for initial examinations identified in Exhibits "1" - "5": (i) the initial examinations did not involve the retrieval, review, or analysis of any meaningful amount of medical records, diagnostic tests, or other information; (ii) there was no risk of significant complications or morbidity – much less mortality – from the Insureds' minor soft-tissue injury complaints, to the extent that they ever had any complaints arising from automobile accidents at all; and (iii) Almonte did not consider any significant number of diagnoses or treatment options for Insureds during the initial examinations, and instead – at the direction of the Clinic Defendants and Clinic Owner Defendants – provided a nearly identical, pre-determined sprain/strain or similar soft tissue injury "diagnosis" for every Insured

44.     In keeping with the fact that these putative "diagnoses" were pre-determined and phony, Almonte – at the direction of the Clinic Defendants and Clinic Owner Defendants – frequently issued substantially identical, phony "diagnoses", on the same date, to more than one Insured involved in a single accident, and recommended a substantially identical course of medically unnecessary "treatment" to the Insureds, despite the fact that they were differently situated.

45.     Based on these phony and pre-determined soft tissue injury "diagnoses", virtually every Insured was directed to return to one of the Clinic Defendants five times each week for medically unnecessary physical therapy during the first two to three weeks of "treatment".

46.     The false "diagnoses" contained within the initial examination reports were included to give the false impression that the initial examinations entailed some legitimate medical decision-making, to create a false basis for the charges under CPT codes 99203, 99204, and 99205, and to create a false justification for the other Fraudulent Services that the Defendants purported to provide to the Insureds.

**2.     The Fraudulent Claims for Follow-Up Examinations**

47.     In addition to the fraudulent initial examinations, the Clinic Defendants and Clinic Owner Defendants also purported to subject most of the Insureds in the claims identified in Exhibits "1" – "5" to multiple, fraudulent follow-up examinations by Almonte. In particular:

(i)     As set forth in Exhibit "1", A&C Medical and Rodriguez billed GEICO under CPT code 99213 or 99215 for each follow-up examination Almonte purportedly provided at A&C Medical.

(ii)    As set forth in Exhibit "2", Care & Services and Hernandez billed GEICO under CPT code 99214 for each follow-up examination Almonte purportedly provided at Care & Services.

(iii)   As set forth in Exhibit "3", Foot Treatment and Rodriguez billed GEICO under CPT code 99213 for each follow-up examination Almonte purportedly provided at Foot Treatment.

15

(iv)     As set forth in Exhibit "4", Simply Health and Menendez billed GEICO under CPT code 99213 or 99214 for each follow-up examination Almonte purportedly provided at Simply Health.

(v)     As set forth in Exhibit "5", Sunset Medical and Borrajo billed GEICO under CPT code 99214 or 99215 for each follow-up examination Almonte purportedly provided at Subset Medical.

48.     Pursuant to the CPT Assistant, which governs reimbursement of PIP claims, the use of CPT code 99213 to bill for a follow-up examination represents – among other things – that: (i) the Insured presented with problems of low to moderate severity; and (ii) the physician performed at least two of the following three components during the examination: (a) took an "expanded problem focused" patient history; (b) conducted an "expanded problem focused physical examination"; and (c) engaged in medical decision-making of "low complexity".

49.     Pursuant to the CPT Assistant, the use of CPT code 99214 to bill for a follow-up examination represents – among other things – that: (i) the Insured presented with problems of moderate to high severity; and (ii) the physician performed at least two of the following three components during the examination: (a) took a "detailed" patient history; (b) conducted a "detailed" physical examination; and (c) engaged in medical decision-making of "moderate complexity".

50.     Pursuant to the CPT Assistant, the use of CPT code 99215 to bill for a follow-up examination represents – among other things – that: (i) the Insured presented with problems of moderate to high severity; and (ii) the physician performed at least two of the following three components during the examination: (a) took a "comprehensive" patient history; (b) conducted a "comprehensive" physical examination; and (c) engaged in medical decision-making of "high complexity".

51.     As set forth below, the charges for the follow-up examinations identified in Exhibits "1" – "5" misrepresented the nature and extent of the follow-up examinations.

**(i)      Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

52.      To the extent that the Insureds in the claims identified in Exhibits "1" - "5" suffered any injuries at all in their minor automobile accidents, the injuries were garden-variety soft tissue injuries such as sprains and strains, which were not severe at all, even at their onset.

53.      Moreover, ordinary strains and sprains virtually always resolve after a short course of conservative treatment or no treatment at all. By the time the Insureds in the claims identified in Exhibits "1" - "5" presented for their putative follow-up examinations, the Insureds either did not have any genuine presenting problems at all as the result of their minor automobile accidents, or else their presenting problems were minimal.

54.      Even so, in the claims for follow-up examinations identified in Exhibits "1" - "5", the Clinic Defendants and Clinic Owner Defendants made the following misrepresentations:

(i)      When billing GEICO for putative follow-up examinations using CPT code 99213, A&C Medical, Foot Treatment, Rodriguez, Simply Health, and Menendez falsely represented that the Insureds presented with problems of low to moderate severity, when in fact the Insureds either did not have any genuine presenting problems at all as the result of their minor automobile accidents at the time of the follow-up examinations, or else their presenting problems were minimal.

(ii)      When billing GEICO for putative follow-up examinations using CPT code 99214, Care & Services, Hernandez, Simply Health, Menendez, Sunset Medical, and Borrajo falsely represented that the Insureds presented with problems of moderate to high severity, when in fact the Insureds either did not have any genuine presenting problems at all as the result of their minor automobile accidents at the time of the follow-up examinations, or else their presenting problems were minimal.

(iii)      When billing GEICO for putative follow-up examinations using CPT code 99215, A&C Medical, Rodriguez, Sunset Medical, and Borrajo falsely represented that the Insureds presented with problems of moderate to high severity, when in fact the Insureds either did not have any genuine presenting problems at all as the result of their minor automobile accidents at the time of the follow-up examinations, or else their presenting problems were minimal.

55.      In the claims for follow-up examinations identified in Exhibits "1" - "5", the Clinic Defendants and Clinic Owner Defendants routinely falsely represented that the Insureds presented

with problems of either low to moderate severity or moderate to high severity in order to: (i) create a false basis for their charges for the examinations under CPT codes 99213, 99214, or 99215, because examinations billable under CPT code 99213, 99214, or 99215 are reimbursable at higher rates than examinations involving presenting problems of minimal severity, or no severity; and (ii) to create a false basis for the laundry list of other Fraudulent Services that the Defendants purported to provide to the Insureds, including additional medically unnecessary follow-up examinations and physical therapy services.

**(ii)     Misrepresentations Regarding the Results of the Follow-Up Examinations**

56.     In the claims for follow-up examinations identified in Exhibits "1" - "5", Almonte did not take any legitimate patient histories, conduct any legitimate physical examinations, or engage in any legitimate medical decision-making at all.

57.     Rather, following the purported follow-up examinations, Almonte – at the direction of the Clinic Defendants and Clinic Owner Defendants – simply: (i) reiterated the false, boilerplate "diagnoses" from the Insureds' initial examinations; and either (ii) referred the Insureds for even more medically unnecessary physical therapy services, despite the fact that the Insureds purportedly already had received extensive physical therapy services that supposedly had not been successful in resolving their purported pain symptoms; or (iii) discharged the Insureds from "treatment", to the extent that their PIP Benefits had been exhausted.

58.     In keeping with the fact that the purported "results" of the follow-up examinations were pre-determined, and had no legitimate connection to the Insureds' true medical circumstances or presentation, at the conclusion of each follow-up examination Almonte – at the direction of the Clinic Defendants and Clinic Owner Defendants – recommended a substantially identical course of medically unnecessary "treatment" to virtually every one of the Insureds identified in Exhibits "1"

18

- "5", irrespective of the Insureds' actual presenting problems, to the extent the Insureds suffered any legitimate injuries at all.

59.     Specifically, virtually every Insured was directed to receive two to four months of purported physical therapy treatments, typically beginning with daily physical therapy for the first two to three weeks of treatment, followed by physical therapy four times per week for the subsequent four weeks, followed by physical therapy three times a week for the final four weeks.

60.     In addition, virtually every Insured received substantially identical <u>types</u> of physical therapy services at each of the respective Clinic Defendants. This, despite the fact that, in a legitimate clinical setting, each individual patient's physical therapy schedule, and the specific physical therapy modalities that will be used, must be tailored to the specific patient's circumstances, symptomatology, and presentation.

61.     By contrast, at each of the Clinic Defendants, the nature and extent of the physical therapy that each Insured purportedly received was pre-determined, and had no legitimate connection to the Insureds' individual circumstances. Accordingly, the phony "follow-up examinations" played no legitimate role in the treatment or care of the Insureds.

**3.     The Fraudulent Claims for "Physical Therapy"**

62.     In addition to the fraudulent initial examinations and follow-up examinations, the Defendants virtually always purported to subject each of the Insureds in the claims identified in Exhibits "1" - "5" to between two and four months of medically unnecessary "physical therapy".

63.     In the claims for physical therapy services identified in Exhibits "1" - "5", the charges were fraudulent, unlawful, and non-reimbursable because the physical therapy services were performed by the Massage Therapist Defendants or other massage therapists associated with the Clinic Defendants, who were not licensed as physical therapists, and who were not working under the direct supervision of any licensed physician or physical therapist.

19

64.     To conceal these facts, beginning in 2014, the Defendants falsely represented – in almost every single bill for almost every single "physical therapy" service in the claims identified in Exhibits "1" – "5" – that Almonte, a licensed physician, had personally performed or directly supervised the performance of the underlying "physical therapy" services.

65.     However, Almonte did not perform or supervise any of the physical therapy services that were billed through the Clinic Defendants to GEICO and other insurers. In fact, in a May 7, 2019 affidavit, Almonte swore that "any representation that I did personally perform or directly supervise physical therapy services at those clinics is simply false."

**D.     The Fraudulent Operation of the Clinic Defendants Without Legitimate Medical Directors**

66.     Because the Clinic Defendants were subject to the Clinic Act, the Clinic Owner Defendants could not operate the Clinic Defendants unless licensed physicians were employed as the Clinic Defendants' medical directors. However, if the Clinic Owner Defendants retained legitimate physicians to serve as the Clinic Defendants' medical directors, any such legitimate physicians actually would be obligated to fulfill the statutory requirements applicable to a clinic medical director, which would impede the Defendants' interrelated schemes.

67.     Accordingly:

(i)     Rodriguez and Borrajo recruited Almonte, a licensed physician, who was willing to falsely pose as the legitimate medical director at A&C Medical, Foot Treatment, and Sunset Medical, respectively, but who – in actuality – would not even attempt to fulfill the statutory requirements applicable to a clinic medical director.

(ii)    Hernandez recruited Tirmal, a licensed physician, who was willing to falsely pose as the legitimate medical director at Care & Services, but who – in actuality – would not even attempt to fulfill the statutory requirements applicable to a clinic medical director.

(iii)   Menendez recruited Pham, a licensed physician, who was willing to falsely pose as the legitimate medical director at Simply Health, but who – in actuality – would not even attempt to fulfill the statutory requirements applicable to a clinic medical director.

68.     In fact, Almonte, Tirmal, and Pham were never genuine medical directors for the Clinic Defendants. Instead, from the beginning of each of their associations with the respective Clinic Defendants, they ceded all day-to-day decision-making and oversight regarding healthcare services to the respective Clinic Owner Defendants.

69.     In keeping with the fact that Almonte, Tirmal, and Pham were never genuine medical directors for the Clinic Defendants:

(i)     Almonte, Tirmal, and Pham never legitimately conducted systematic reviews of the Clinic Defendants' billings to ensure that the billings were not fraudulent or unlawful, and instead permitted the Clinic Defendants and Clinic Owner Defendants to misrepresent the identities of the treating providers, bill for illusory services, misrepresent the nature, extent, and results of patient examinations, and bill for "physical therapy" services that were performed by unsupervised masseuses.

(ii)    Almonte, Tirmal, and Pham never legitimately ensured that all healthcare practitioners at the Clinic Defendants had active appropriate certification or licensure for the level of care being provided, and instead permitted unsupervised masseuses to purport to perform "physical therapy" on behalf of the Clinic Defendants.

(iii)   Almonte swore, in a May 7, 2019 affidavit, that he received "no training" in how to serve as a clinic medical director, that he spent only a few hours each month performing his "medical director" duties at A&C Medical, Foot Treatment, and Sunset Medical, and that he never actually reviewed any of the actual bills from A&C Medical, Foot Treatment, and Sunset Medical, and instead looked only at a few "billing summaries" provided to him by the Clinic Defendants, themselves.

(iv)    Pham swore, in a February 13, 2019 affidavit, that he received "minimal training" in how to serve as a clinic medical director, that he spent only about one hour each month performing his "medical director" duties at Simply Health, that he reviewed only a handful of patient files at Simply Health each month, and that he did not know whether the small sample of files he reviewed each month constituted any significant percentage of the overall number of patients who treated at Simply Health each month.

(v)     Both Almonte and Pham swore, in their respective affidavits, that they were unaware that A&C Medical, Foot Treatment, Sunset Medical, and Simply Health were falsely billing for "physical therapy" services as if they had been performed or

21

directly supervised by Almonte, when in fact they were performed by unsupervised masseuses.

70.     In the claims identified in Exhibits "1" – "5", the Clinic Defendants and Clinic Owner Defendants falsely represented that the Clinic Defendants were in compliance with the Clinic Act and eligible to receive PIP reimbursement. In fact, the Clinic Defendants were not in compliance with the Clinic Act, and were not eligible to receive PIP reimbursement.

## III.    **The Fraudulent Claims the Defendants Submitted or Caused to be Submitted to GEICO**

71.     To support their fraudulent charges, the Defendants systematically submitted or caused to be submitted thousands of HCFA-1500 forms and treatment reports through the Clinic Defendants to GEICO, containing thousands of individual charges, seeking payment for the Fraudulent Services that the Defendants were not entitled to receive.

72.     The claims that the Defendants submitted or caused to be submitted to GEICO were false and misleading in the following, material respects:

(i)     The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that the Clinic Defendants were in compliance with the Clinic Act and eligible to collect PIP Benefits in the first instance. In fact, the Clinic Defendants never were in compliance with the Clinic Act, and never were eligible to collect PIP Benefits, because they were operated without legitimate medical directors who legitimately fulfilled the statutory requirements applicable to clinic medical directors.

(ii)    The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement. In fact, the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement, because: (a) they were medically unnecessary and provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; and (b) in the case of the "physical therapy" services, because they were provided by unsupervised massage therapists, and therefore either unlawfully were performed by individuals who lacked physical therapy licenses, or else constituted non-reimbursable massage, and because the claims misrepresented the identities of the actual treating providers.

(iii)   The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that the Fraudulent Services were medically necessary and, in many cases, misrepresented to GEICO that the Fraudulent Services actually were performed. In fact, the Fraudulent Services frequently were not performed at all and, to the extent that they were performed, they were not medically necessary and were performed as part of a pre-determined fraudulent treatment and billing protocol designed solely to financially enrich the Defendants, not to benefit the Insureds who supposedly were subjected to them.

(iv)   The HCFA-1500 forms and treatment reports submitted by and on behalf of the Defendants frequently misrepresented and exaggerated the level of the Fraudulent Services and the nature of the Fraudulent Services that purportedly were provided.

## IV.   The Defendants' Fraudulent Concealment and GEICO's Justifiable Reliance

73.   The Defendants were legally and ethically obligated to act honestly and with integrity in connection with their performance of the Fraudulent Services and their submission of charges to GEICO. Even so, the Defendants knowingly misrepresented and concealed facts related to the Clinic Defendants in an effort to prevent discovery: (i) that the Clinic Defendants lacked legitimate medical directors, and therefore were ineligible to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were being provided – to the extent that they were provided at all – by unsupervised massage therapists in contravention of Florida law; and (iii) that the Fraudulent Services were medically unnecessary.

74.   GEICO is under statutory and contractual obligations to promptly and fairly process claims within 30 days. The facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and acts of concealment described above, were designed to and did cause GEICO to rely upon them. As a result, GEICO has incurred damages of more than $4,350,000.00.

75.   GEICO did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it commenced this action.

23

### FIRST CAUSE OF ACTION
**Against A&C Medical, Care & Services, Foot Treatment,
Simply Health, and Sunset Medical
(Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)**

76.     GEICO incorporates, as though fully set forth herein, each and every allegation in

paragraphs 1-75 above.

77.     There is an actual case in controversy between GEICO and the Clinic Defendants

regarding more than $75,000.00 in pending fraudulent claims for the Fraudulent Services that have

been submitted to GEICO.

78.     The Clinic Defendants have no right to receive payment for any pending bills

submitted to GEICO because of the fraudulent and unlawful activity described herein.

79.     Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment

Act, 28 U.S.C. §§ 2201 and 2202, declaring that A&C Medical, Care & Services, Foot Treatment,

Simply Health, and Sunset Medical have no right to receive payment for any pending bills

submitted to GEICO.

### SECOND CAUSE OF ACTION
**Against Rodriguez
(Violation of RICO, 18 U.S.C. § 1962(c))**

80.     GEICO incorporates, as though fully set forth herein, each and every allegation in

paragraphs 1-75, above.

81.     A&C Medical is an ongoing "enterprise," as that term is defined in 18 U.S.C. §

1961(4), that engages in activities that affected interstate commerce. Rodriguez knowingly has

conducted and/or participated in the conduct of A&C Medical's affairs through a pattern of

racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. §

1341, based upon the use of the United States mails to submit or cause to be submitted thousands

of fraudulent charges on a continuous basis for over three years seeking payments that A&C

24

Medical was not eligible to receive under the No-Fault Law. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described in the chart annexed hereto as Exhibit "1".

82.     GEICO has been injured by reason of the above-described conduct in that it has paid at least $1,500,000.00 pursuant to the fraudulent bills submitted through the A&C Medical enterprise. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

### THIRD CAUSE OF ACTION
**Against Rodriguez and Perez**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

83.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

84.     A&C Medical is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce. Rodriguez and Perez are employed by or associated with the A&C Medical enterprise. Rodriguez and Perez knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of A&C Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over three years seeking payments that A&C Medical was not eligible to receive under the No-Fault Law. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through

the date of this Complaint are described in the chart annexed hereto as Exhibit "1". Each such mailing was made in furtherance of the mail fraud scheme.

85.     GEICO has been injured by reason of the above-described conduct in that it has paid at least $1,500,000.00 pursuant to the fraudulent bills submitted through the A&C Medical enterprise. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**FOURTH CAUSE OF ACTION**
**Against the A&C Medical Defendants**
**(Under Fla. Stat. 501.201 et. seq.)**

86.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

87.     A&C Medical, Rodriguez, and Perez are actively engaged in trade and commerce in the State of Florida.

88.     GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

89.     As set forth herein, the A&C Medical Defendants engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally obtain PIP Benefits from GEICO. Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.  Additionally, the conduct of the A&C Medical Defendants has been materially injurious to GEICO and its Insureds.

90.     The A&C Medical Defendants' unfair and deceptive acts have caused GEICO to sustain damages of at least $1,500,000.00. By reason of the A&C Medical Defendants' conduct, GEICO is also entitled to recover costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

26

**FIFTH CAUSE OF ACTION**
**Against Rodriguez and Perez**
**(Under Fla. Stat. 772.103 et. seq.)**

91.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

92.     In furtherance of the fraudulent scheme, Rodriguez and Perez submitted or caused to be submitted thousands of fraudulent charges through the A&C Medical enterprise to GEICO seeking payment pursuant under automobile insurance policies issued by GEICO to Florida Insureds.  When the billing was submitted, Rodriguez and Perez knew that the billing contained false and misleading information concerning facts material to the claims for which reimbursement was being sought. These knowing and intentional acts constitute a pattern of criminal activity, in that said acts constitute insurance fraud in violation of Fla. Stat. § 817.234(1)(a).

93.     Rodriguez and Perez's pattern of criminal activity has caused GEICO to sustain damages of at least $1,500,000.00. By reason of Rodriguez and Perez's conduct, GEICO is also entitled to recover threefold the actual damages it actually sustained, reasonable attorney's fees, and court costs pursuant to Fla. Stat. § 772.104.

**SIXTH CAUSE OF ACTION**
**Against the A&C Medical Defendants**
**(Common Law Fraud)**

94.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

95.     As set forth herein, A&C Medical, Rodriguez, and Perez intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of submitting, or causing to be submitted, thousands of fraudulent charges through A&C Medical for the Fraudulent Services.

96.     GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured by reason of the above-described conduct in that it has paid at least $1,500,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by the A&C Medical Defendants through A&C Medical. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## SEVENTH CAUSE OF ACTION
### Against the A&C Medical Defendants
### (Unjust Enrichment)

97.     GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-75, above.

98.     As set forth above, A&C Medical, Rodriguez, and Perez have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

99.     The A&C Medical Defendants have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that the A&C Medical Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme. The A&C Medical Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

100.    By reason of the above, the A&C Medical Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $1,500,000.00.

## EIGHTH CAUSE OF ACTION
### Against Hernandez
### (Violation of RICO, 18 U.S.C. § 1962(c))

101.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

102.     Care & Services is an ongoing "enterprise," as that term is defined in 18 U.S.C. §

1961(4), that engages in activities that affected interstate commerce. Hernandez knowingly has

conducted and/or participated in the conduct of Care & Services' affairs through a pattern of

racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. §

1341, based upon the use of the United States mails to submit or cause to be submitted thousands

of fraudulent charges on a continuous basis for over one and a half years seeking payments that

Care & Services was not eligible to receive under the No-Fault Law. A representative sample of

the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the

pattern of racketeering activity identified through the date of this Complaint are described in the

chart annexed hereto as Exhibit "2".

103.     GEICO has been injured by reason of the above-described conduct in that it has

paid at least $500,000.00 pursuant to the fraudulent bills submitted through the Care & Services

enterprise. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable

attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and

proper.

### NINTH CAUSE OF ACTION
**Against Hernandez and Tirmal**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

104.     GEICO incorporates, as though fully set forth herein, each and every allegation in

paragraphs 1-75, above.

105.     Care & Services is an ongoing "enterprise," as that term is defined in 18 U.S.C. §

1961(4), that engages in activities that affected interstate commerce. Hernandez and Tirmal are

employed by or associated with the Care & Services enterprise. Hernandez and Tirmal knowingly

have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the

conduct of Care & Services' affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over three years seeking payments that Care & Services was not eligible to receive under the No-Fault Law. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described in the chart annexed hereto as Exhibit "2". Each such mailing was made in furtherance of the mail fraud scheme.

106.   GEICO has been injured by reason of the above-described conduct in that it has paid at least $500,000.00 pursuant to the fraudulent bills submitted through the Care & Services enterprise. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**TENTH CAUSE OF ACTION**
**Against the Care & Services Defendants**
**(Under Fla. Stat. 501.201 et. seq.)**

107.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

108.   Care & Services, Hernandez, and Tirmal are actively engaged in trade and commerce in the State of Florida.

109.   GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

110.   As set forth herein, the Care & Services Defendants engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally obtain PIP Benefits from GEICO. Such acts and practices offend public

policy and are immoral, unethical, oppressive, and unscrupulous.  Additionally, the conduct of the Care & Services Defendants has been materially injurious to GEICO and its Insureds.

111.    The Care & Services Defendants' unfair and deceptive acts have caused GEICO to sustain damages of at least $500,000.00. By reason of the Care & Services Defendants' conduct, GEICO is also entitled to recover costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

**ELEVENTH CAUSE OF ACTION**
**Against Hernandez and Tirmal**
**(Under Fla. Stat. 772.103 et. seq.)**

112.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

113.    In furtherance of the fraudulent scheme, Hernandez and Tirmal submitted or caused to be submitted thousands of fraudulent charges through the A&C Medical enterprise to GEICO seeking payment pursuant under automobile insurance policies issued by GEICO to Florida Insureds.  When the billing was submitted, Hernandez and Tirmal knew that the billing contained false and misleading information concerning facts material to the claims for which reimbursement was being sought. These knowing and intentional acts constitute a pattern of criminal activity, in that said acts constitute insurance fraud in violation of Fla. Stat. § 817.234(1)(a).

114.    Hernandez and Tirmal's pattern of criminal activity has caused GEICO to sustain damages of at least $500,000.00. By reason of Hernandez and Tirmal's conduct, GEICO is also entitled to recover threefold the actual damages it actually sustained, reasonable attorney's fees, and court costs pursuant to Fla. Stat. § 772.104.

**TWELFTH CAUSE OF ACTION**
**Against the Care & Services Defendants**
**(Common Law Fraud)**

115.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

116.     As set forth herein, Care & Services, Hernandez, and Tirmal intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of submitting, or causing to be submitted, thousands of fraudulent charges through Care & Services for the Fraudulent Services.

117.     GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured by reason of the above-described conduct in that it has paid at least $500,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by the Care & Services Defendants through Care & Services. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

**THIRTEENTH CAUSE OF ACTION**
**Against the Care & Services Defendants**
**(Unjust Enrichment)**

118.     GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-75, above.

119.     As set forth above, Care & Services, Hernandez, and Tirmal have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

120.     The Care & Services Defendants have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that the Care & Services Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme. The Care &

Services Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

121.    By reason of the above, the Care & Services Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $500,000.00.

**FOURTEENTH CAUSE OF ACTION**
**Against Rodriguez**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

122.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

123.    Foot Treatment is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce. Rodriguez knowingly has conducted and/or participated in the conduct of Foot Treatment's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over two years seeking payments that Foot Treatment was not eligible to receive under the No-Fault Law. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described in the chart annexed hereto as Exhibit "3".

124.    GEICO has been injured by reason of the above-described conduct in that it has paid at least $900,000.00 pursuant to the fraudulent bills submitted through the Foot Treatment enterprise. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**FIFTEENTH CAUSE OF ACTION**
**Against Rodriguez and Wong**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

125.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

126.    Foot Treatment is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce. Rodriguez and Wong are employed by or associated with the Foot Treatment enterprise. Rodriguez and Wong knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Foot Treatment's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over two years seeking payments that Foot Treatment was not eligible to receive under the No-Fault Law. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described in the chart annexed hereto as Exhibit "3". Each such mailing was made in furtherance of the mail fraud scheme.

127.    GEICO has been injured by reason of the above-described conduct in that it has paid at least $900,000.00 pursuant to the fraudulent bills submitted through the Foot Treatment enterprise. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

**SIXTEENTH CAUSE OF ACTION**
**Against the Foot Treatment Defendants**
**(Under Fla. Stat. 501.201 et. seq.)**

128.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

129.     Foot Treatment, Rodriguez, and Wong are actively engaged in trade and commerce in the State of Florida.

130.     GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

131.     As set forth herein, the Foot Treatment Defendants engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally obtain PIP Benefits from GEICO. Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.  Additionally, the conduct of the Foot Treatment Defendants has been materially injurious to GEICO and its Insureds.

132.     The Foot Treatment Defendants' unfair and deceptive acts have caused GEICO to sustain damages of at least $900,000.00. By reason of the Foot Treatment Defendants' conduct, GEICO is also entitled to recover costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

**SEVENTEENTH CAUSE OF ACTION**
**Against Rodriguez and Wong**
**(Under Fla. Stat. 772.103 et. seq.)**

133.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

134.     In furtherance of the fraudulent scheme, Rodriguez and Wong submitted or caused to be submitted thousands of fraudulent charges through the Foot Treatment enterprise to GEICO seeking payment pursuant under automobile insurance policies issued by GEICO to Florida

Insureds. When the billing was submitted, Rodriguez and Wong knew that the billing contained false and misleading information concerning facts material to the claims for which reimbursement was being sought. These knowing and intentional acts constitute a pattern of criminal activity, in that said acts constitute insurance fraud in violation of Fla. Stat. § 817.234(1)(a).

135.    Rodriguez and Wong's pattern of criminal activity has caused GEICO to sustain damages of at least $900,000.00. By reason of Rodriguez and Wong's conduct, GEICO is also entitled to recover threefold the actual damages it actually sustained, reasonable attorney's fees, and court costs pursuant to Fla. Stat. § 772.104.

**EIGHTEENTH CAUSE OF ACTION**
**Against the Foot Treatment Defendants**
**(Common Law Fraud)**

136.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

137.    As set forth herein, Foot Treatment, Rodriguez, and Wong intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of submitting, or causing to be submitted, thousands of fraudulent charges through Foot Treatment for the Fraudulent Services.

138.    GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured by reason of the above-described conduct in that it has paid at least $900,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by the Foot Treatment Defendants through Foot Treatment. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## NINETEENTH CAUSE OF ACTION
### Against the Foot Treatment Defendants
### (Unjust Enrichment)

139.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-75, above.

140.    As set forth above, Foot Treatment, Rodriguez, and Wong have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

141.    The Foot Treatment Defendants have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that the Foot Treatment Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme. The Foot Treatment Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

142.    By reason of the above, the Foot Treatment Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $900,000.00.

## TWENTIETH CAUSE OF ACTION
### Against Menendez
### (Violation of RICO, 18 U.S.C. § 1962(c))

143.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

144.    Simply Health is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce. Menendez knowingly has conducted and/or participated in the conduct of Simply Health's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over two years seeking payments that Simply

Health was not eligible to receive under the No-Fault Law. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described in the chart annexed hereto as Exhibit "4".

145.    GEICO has been injured by reason of the above-described conduct in that it has paid at least $700,000.00 pursuant to the fraudulent bills submitted through the Simply Health enterprise. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**TWENTY-FIRST CAUSE OF ACTION**
**Against Menendez and Castro**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

146.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

147.    Simply Health is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce. Menendez and Castro are employed by or associated with the Simply Health enterprise. Menendez and Castro knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Simply Health's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over two years seeking payments that Simply Health was not eligible to receive under the No-Fault Law. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through

the date of this Complaint are described in the chart annexed hereto as Exhibit "4". Each such

mailing was made in furtherance of the mail fraud scheme.

148.    GEICO has been injured by reason of the above-described conduct in that it has

paid at least $700,000.00 pursuant to the fraudulent bills submitted through the Simply Health

enterprise. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable

attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and

proper.

**TWENTY-SECOND CAUSE OF ACTION**
**Against the Simply Health Defendants**
**(Under Fla. Stat. 501.201 et. seq.)**

149.    GEICO incorporates, as though fully set forth herein, each and every allegation in

paragraphs 1-75, above.

150.    Simply Health, Menendez, and Castro are actively engaged in trade and commerce

in the State of Florida.

151.    GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

152.    As set forth herein, the Simply Health Defendants engaged in unfair, deceptive, and

unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of

their scheme to illegally obtain PIP Benefits from GEICO. Such acts and practices offend public

policy and are immoral, unethical, oppressive, and unscrupulous.  Additionally, the conduct of the

Simply Health Defendants has been materially injurious to GEICO and its Insureds.

153.    The Simply Health Defendants' unfair and deceptive acts have caused GEICO to

sustain damages of at least $700,000.00. By reason of the Simply Health Defendants' conduct,

GEICO is also entitled to recover costs and reasonable attorneys' fees pursuant to Fla. Stat.

501.211(2).

**TWENTY-THIRD CAUSE OF ACTION**
**Against Menendez and Castro**
**(Under Fla. Stat. 772.103 et. seq.)**

154.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

155.     In furtherance of the fraudulent scheme, Menendez and Castro submitted or caused to be submitted thousands of fraudulent charges through the Simply Health enterprise to GEICO seeking payment pursuant under automobile insurance policies issued by GEICO to Florida Insureds. When the billing was submitted, Menendez and Castro knew that the billing contained false and misleading information concerning facts material to the claims for which reimbursement was being sought. These knowing and intentional acts constitute a pattern of criminal activity, in that said acts constitute insurance fraud in violation of Fla. Stat. § 817.234(1)(a).

156.     Menendez and Castro's pattern of criminal activity has caused GEICO to sustain damages of at least $750,000.00. By reason of Menendez and Castro's conduct, GEICO is also entitled to recover threefold the actual damages it actually sustained, reasonable attorney's fees, and court costs pursuant to Fla. Stat. § 772.104.

**TWENTY-FOURTH CAUSE OF ACTION**
**Against the Simply Health Defendants**
**(Common Law Fraud)**

157.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

158.     As set forth herein, Simply Health, Menendez, and Castro intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of submitting, or causing to be submitted, thousands of fraudulent charges through Simply Health for the Fraudulent Services.

40

159.     GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured by reason of the above-described conduct in that it has paid at least $700,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by the Simply Health Defendants through Simply Health. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

### TWENTY-FIFTH CAUSE OF ACTION
**Against the Simply Health Defendants**
**(Unjust Enrichment)**

160.     GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-75, above.

161.     As set forth above, Simply Health, Menendez, and Castro have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

162.     The Simply Health Defendants have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that the Simply Health Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme. The Simply Health Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

163.     By reason of the above, the Simply Health Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $700,000.00.

### TWENTY-SIXTH CAUSE OF ACTION
**Against Borrajo**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

164.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

165. Sunset Medical is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce. Borrajo knowingly has conducted and/or participated in the conduct of Sunset Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over three years seeking payments that Sunset Medical was not eligible to receive under the No-Fault Law. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described in the chart annexed hereto as Exhibit "5".

166. GEICO has been injured by reason of the above-described conduct in that it has paid at least $750,000.00 pursuant to the fraudulent bills submitted through the Sunset Medical enterprise. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

## TWENTY-SEVENTH CAUSE OF ACTION
### Against Borrajo, Pellitero, and Reyes
### (Violation of RICO, 18 U.S.C. § 1962(d))

167. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

168. Sunset Medical is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce. Borrajo, Pellitero, and Reyes are employed by or associated with the Sunset Medical enterprise. Borrajo, Pellitero, and Reyes knowingly have agreed, combined and conspired to conduct and/or participate, directly or

indirectly, in the conduct of Sunset Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over three years seeking payments that Sunset Medical was not eligible to receive under the No-Fault Law. A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described in the chart annexed hereto as Exhibit "5". Each such mailing was made in furtherance of the mail fraud scheme.

169. GEICO has been injured by reason of the above-described conduct in that it has paid at least $750,000.00 pursuant to the fraudulent bills submitted through the Sunset Medical enterprise. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## TWENTY-EIGHTH CAUSE OF ACTION
### Against the Sunset Medical Defendants
#### (Under Fla. Stat. 501.201 et. seq.)

170. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

171. Sunset Medical, Borrajo, Pellitero, and Reyes are actively engaged in trade and commerce in the State of Florida.

172. GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

173. As set forth herein, the Sunset Medical Defendants engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally obtain PIP Benefits from GEICO. Such acts and practices offend public

policy and are immoral, unethical, oppressive, and unscrupulous.  Additionally, the conduct of the Sunset Medical Defendants has been materially injurious to GEICO and its Insureds.

174.    The Sunset Medical Defendants' unfair and deceptive acts have caused GEICO to sustain damages of at least $750,000.00. By reason of the Sunset Medical Defendants' conduct, GEICO is also entitled to recover costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

**TWENTY-NINTH CAUSE OF ACTION**
**Against Borrajo, Pellitero, and Reyes**
**(Under Fla. Stat. 772.103 et. seq.)**

175.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

176.    In furtherance of the fraudulent scheme, Borrajo and Pellitero, and Reyes submitted or caused to be submitted thousands of fraudulent charges through the Sunset Medical enterprise to GEICO seeking payment pursuant under automobile insurance policies issued by GEICO to Florida Insureds. When the billing was submitted, Borrajo and Pellitero, and Reyes knew that the billing contained false and misleading information concerning facts material to the claims for which reimbursement was being sought. These knowing and intentional acts constitute a pattern of criminal activity, in that said acts constitute insurance fraud in violation of Fla. Stat. § 817.234(1)(a).

177.    Borrajo and Pellitero, and Reyes's pattern of criminal activity has caused GEICO to sustain damages of at least $750,000.00. By reason of Borrajo and Pellitero, and Reyes's conduct, GEICO is also entitled to recover threefold the actual damages it actually sustained, reasonable attorney's fees, and court costs pursuant to Fla. Stat. § 772.104.

## THIRTETH CAUSE OF ACTION
### Against the Sunset Medical Defendants
### (Common Law Fraud)

178.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1-75, above.

179.    As set forth herein, Sunset Medical, Borrajo, Pellitero, and Reyes intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of submitting, or causing to be submitted, thousands of fraudulent charges through Sunset Medical for the Fraudulent Services.

180.    GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured by reason of the above-described conduct in that it has paid at least $750,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by the Sunset Medical Defendants through Sunset Medical. Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## THIRTY-FIRST CAUSE OF ACTION
### Against the Sunset Medical Defendants
### (Unjust Enrichment)

181.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1-75, above.

182.    As set forth above, Sunset Medical, Borrajo, Pellitero, and Reyes have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

183.    The Sunset Medical Defendants have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that the Sunset Medical Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme. The Sunset Medical

Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

184.    By reason of the above, the Sunset Medical Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $750,000.00.

<strong><u>JURY DEMAND</u></strong>

185.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. demand that a Judgment be entered in their favor:

A.    On the First Cause of Action against A&C Medical, Care & Services, Foot Treatment, Simply Health, and Sunset Medical, for a declaration that A&C Medical, Care & Services, Foot Treatment, Simply Health, and Sunset Medical have no right to receive payment for any pending bills submitted to GEICO;

B.    On the Second Cause of Action against Rodriguez, for compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $1,500,000.00, together with treble damages, costs, and reasonable attorneys' fees plus interest;

C.    On the Third Cause of Action against Rodriguez and Perez, for compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $1,500,000.00, together with treble damages, costs, and reasonable attorneys' fees plus interest;

D.    On the Fourth Cause of Action against A&C Medical, Rodriguez, and Perez, for compensatory damages in an amount to be determined at trial but in excess of $1,500,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

E.      On the Fifth Cause of Action against Rodriguez and Perez, for compensatory damages in an amount to be determined at trial but in excess of $1,500,000.00, together with treble damages, reasonable attorney's fees, and court costs;

F.      On the Sixth Cause of Action against A&C Medical, Rodriguez, and Perez, for compensatory damages in an amount to be determined at trial but in excess of $1,500,000.00, together with punitive damages, costs, interest and such other and further relief as is proper;

G.      On the Seventh Cause of Action against A&C Medical, Rodriguez, and Perez, for more than $1,500,000.00 in compensatory damages, plus costs and interest and such other and further relief as is proper;

H.      On the Eighth Cause of Action against Hernandez, for compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $500,000.00, together with treble damages, costs, and reasonable attorneys' fees plus interest;

I.      On the Ninth Cause of Action against Hernandez and Tirmal, for compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $500,000.00, together with treble damages, costs, and reasonable attorneys' fees plus interest;

J.      On the Tenth Cause of Action against Care & Services, Hernandez, and Tirmal, for compensatory damages in an amount to be determined at trial but in excess of $500,000.00, together with costs and reasonable attorneys' fees;

K.      On the Eleventh Cause of Action against Hernandez and Tirmal, for compensatory damages in an amount to be determined at trial but in excess of $500,000.00, together with treble damages, reasonable attorney's fees, and court costs;

L.      On the Twelfth Cause of Action against Care & Services, Hernandez, and Tirmal, for compensatory damages in an amount to be determined at trial but in excess of $500,000.00, together with punitive damages, costs, interest and such other and further relief as is proper;

M.      On the Thirteenth Cause of Action against Care & Services, Hernandez, and Tirmal, for more than $500,000.00 in compensatory damages, plus costs and interest and such other and further relief as is proper;

N.      On the Fourteenth Cause of Action against Rodriguez, for compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $900,000.00, together with treble damages, costs, and reasonable attorneys' fees plus interest;

O.      On the Fifteenth Cause of Action against Rodriguez and Wong, for compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $900,000.00, together with treble damages, costs, and reasonable attorneys' fees plus interest;

P.      On the Sixteenth Cause of Action against Foot Treatment, Rodriguez, and Wong, for compensatory damages in an amount to be determined at trial but in excess of $900,000.00, together with costs and reasonable attorneys' fees;

Q.      On the Seventeenth Cause of Action against Rodriguez and Wong, compensatory damages in an amount to be determined at trial but in excess of $900,000.00, together with treble damages, reasonable attorney's fees, and court costs;

R.      On the Eighteenth Cause of Action against Foot Treatment, Rodriguez, and Wong, for compensatory damages in an amount to be determined at trial but in excess of $900,000.00, together with punitive damages, costs, interest and such other and further relief as is proper;

S.     On the Nineteenth Cause of Action against Foot Treatment, Rodriguez, and Wong, for more than $900,000.00 in compensatory damages, plus costs and interest and such other and further relief as is proper;

T.     On the Twentieth Cause of Action against Menendez, for compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $700,000.00, together with treble damages, costs, and reasonable attorneys' fees plus interest;

U.     On the Twenty-First Cause of Action against Menendez and Castro, for compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $700,000.00, together with treble damages, costs, and reasonable attorneys' fees plus interest;

V.     On the Twenty-Second Cause of Action against Simply Health, Menendez, and Castro, for compensatory damages in an amount to be determined at trial but in excess of $700,000.00, together with costs and reasonable attorneys' fees;

W.     On the Twenty-Third Cause of Action against Menendez and Castro, for compensatory damages in an amount to be determined at trial but in excess of $700,000.00, together with treble damages, reasonable attorney's fees, and court costs;

X.     On the Twenty-Fourth Cause of Action against Simply Health, Menendez, and Castro, for compensatory damages in an amount to be determined at trial but in excess of $700,000.00, together with punitive damages, costs, interest and such other and further relief as is proper;

Y.     On the Twenty-Fifth Cause of Action against Simply Health, Menendez, and Castro, for more than $700,000.00 in compensatory damages, plus costs and interest and such other and further relief as is proper;

Z.      On the Twenty-Sixth Cause of Action against Borrajo, for compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $750,000.00, together with treble damages, costs, and reasonable attorneys' fees plus interest;

AA.      On the Twenty-Seventh Cause of Action against Borrajo, Pellitero, and Reyes, for compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $750,000.00, together with treble damages, costs, and reasonable attorneys' fees plus interest;

BB.      On the Twenty-Eighth Cause of Action against Sunset Medical, Borrajo, Pellitero, and Reyes compensatory damages in an amount to be determined at trial but in excess of $750,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

CC.      On the Twenty-Ninth Cause of Action against Borrajo, Pellitero, and Reyes, for compensatory damages in an amount to be determined at trial but in excess of $750,000.00, together with treble damages, reasonable attorney's fees, and court costs;

DD.      On the Thirtieth Cause of Action against Sunset Medical, Borrajo, Pellitero, and Reyes, for compensatory damages in an amount to be determined at trial but in excess of $750,000.00, together with punitive damages, costs, interest and such other and further relief as is proper; and

EE.      On the Thirty-First Cause of Action against Sunset Medical, Borrajo, Pellitero, and Reyes, for more than $750,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

Dated:      August 21, 2019

 */s/ John P. Marino*
John P. Marino (FBN 814539)
Lindsey R. Trowell (FBN 678783)
Kristen Wenger (FBN 92136)
SMITH, GAMBRELL & RUSSELL, LLP
50 North Laura Street, Suite 2600

Jacksonville, Florida 32202
Phone:  (904) 598-6100
Facsimile:  (904) 598-6204
ltrowell@sgrlaw.com
jmarino@sgrlaw.com
kwenger@sgrlaw.com

and

Michael Vanunu (admitted pro hac vice)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11550
Phone:  (516) 357-3000
Facsimile:  (516) 357-3333
barry.levy@rivkin.com
max.gershenoff@rivkin.com
michael.vanunu@rivkin.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 21, 2019, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is also being served on this day on the counsel of record as on the attached service list, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing via the CM/ECF system.

*/s/ John P. Marino*
Attorney

**SERVICE LIST**

Lindsey R. Trowell (FBN 678783)
John P. Marino (FBN 814539)
Kristen Wenger (FBN 92136)
SMITH, GAMBRELL & RUSSELL, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Phone:  (904) 598-6100
Facsimile:  (904) 598-6204
ltrowell@sgrlaw.com
jmarino@sgrlaw.com
kwenger @sgrlaw.com

Michael Vanunu (admitted pro hac vice)
New York Bar No. 4983953
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11550
Phone (516) 357-3000
Facsimile (516) 357-3333
michael.vanunu@rivkin.com

*Attorneys for Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co.*

Louis V. Martinez
Law Offices Of Louis V. Martinez
100 SE 2nd Street, Suite 3400
Miami, FL 33131
Phone: 305-375-9220
Fax: 305-375-8050
louisvmartinez@aol.com

*Attorneys for Defendant Alain Osorio Perez, LMT*

A&C Medical Center Services, Corp.
2550 NW 72 Ave
Suite 208
Miami, FL 33122

Jorge Luis Fors
FORS | ATTORNEYS AT LAW
1108 Ponce De Leon Boulevard
Coral Gables, FL 33134
Phone: 305-448-5977
Fax: 446-1898
info@forslegal.com

*Attorneys for Defendants Danais Reyes, LMT and Denia Pellitero, LMT, Maria Borrajo, and Sunset Medical Network, Inc.*

Thomas P. Murphy
555 NE 34th Street, Suite 603
Miami, Florida 33137
Phone: 305-978-5817
Fax: 305-438-9005
tpmlawyer@hotmail.com.

*Attorneys for Defendant Care & Services of Rehabilitation, Inc*

Avery A. Dial
Bruce Scott Liebman
KAUFMAN DOLOWICH & VOLUCK
100 SE 3rd Avenue, Suite 1500
Fort Lauderdale, Floridda 33394
Phone: 954-712-7442
Fax: 888-464-7982
*Attorneys for Defendant Vivek Vijay Tirmal, M.D.*

Stuart Barry Yanofsky
8551 W Sunrise Boulevard, Suite 210
Plantation, FL 33322
Phone: 954-473-0117
Fax: 954-473-0520
stuart@stuartyanofsky.com

*Attorneys for Defendant Elizandro Menendez, Pilar M. Crespo Castro, LMT, Simply Health Care, Inc.*

Foot Treatment Center, Inc.
Registered Agent: Camila Peraza Gomez
10700 Carribean Blvd.
Suite 312
Cutler Bay, FL 33189

Gabriel Wong
9860 SW 45th Street
Miami, FL 33165